1  SPENCER HOSIE (CA Bar No. 101777)
   shosie@hosielaw.com
2  DIANE S. RICE (CA Bar No. 118303)
   drice@hosielaw.com
3  DARRELL R. ATKINSON (CA Bar No. 280564)
   datkinson@hosielaw.com
4  HOSIE RICE LLP
   149 New Montgomery Street, 4th Floor
5  San Francisco, CA 94105
   (415) 247-6000 Tel.
6
7  Attorneys for Plaintiff
   MARTIN RAY WINERY, INC.
8
9              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                 SAN FRANCISCO DIVISION
11
12 MARTIN RAY WINERY, INC.,              )  Case No.: 3:25-cv-2925
   a California corporation,             )
13                                       )  **ORIGINAL COMPLAINT AND DEMAND**
                Plaintiff,               )  **FOR JURY TRIAL**
14                                       )
          vs.                            )  **1. Federal Trademark Counterfeiting**
15                                       )  **2. Trademark Infringement**
   CAMERON HUGHES, an individual, and    )  **3. Federal Unfair Competition**
16 DOES 1-10, inclusive,                 )  **4. Dilution of a Famous Mark**
                                         )  **5. Cybersquatting**
17                                       )  **6. Unfair Competition**
                Defendant(s).            )  **7. False Advertising**
18                                       )  **8. Trademark Infringement – California**
                                         )     **Common Law**
19                                       )  **9. Unfair Competition – California**
                                         )     **Common Law**
20                                       )  **10. Breach of Contract**
                                         )  **11. Intentional Interference**
21                                       )  **12. Slander**
                                         )  **13. Unjust Enrichment/Restitution**
22                                       )  **14. Accounting**
                                         )
23 ─────────────────────────────────────   **JURY TRIAL DEMANDED**
24
25
26
27
28

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

Plaintiff Martin Ray Winery, Inc. ("MRW"), by and through its counsel, hereby files this Complaint and Demand for Jury Trial against Defendant Cameron Hughes and his new company, The Négociant ("Hughes" and "Defendants").

## COMPLAINT

Martin Ray Winery complains and alleges as follows:

## THE PARTIES

1.      MRW is a California corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California.

2.      Hughes, an individual, resides in this judicial district at 1440 Lawndale Road, Kenwood, California. Additionally, the current Terms of Service on The Négociant webpage refer to its business address at "The Négociant, 251 Rhode Island St., STE 207, San Francisco CA 94103-9168, United States."

## JURISDICTION AND VENUE

3.      Hughes currently markets, promotes, advertises, sources, and distributes bulk wines and sells them once bottled at a discount in the United States.  The Defendant infringes MRW's registered trademark in U.S. commerce.

4.      MRW brings this action under U.S. trademark law, 15 U.S.C. § 1051 *et seq.*, and under various California state law sections and common law provisions.

5.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this case arises under federal law, that is, the Lanham Act, 15 U.S.C. §§ 1051 *et. seq.*

6.      This Court has supplemental jurisdiction over any state law statutory and common law claims pursuant to 28 U.S.C. § 1367 as such claims are so related to the federal claims that they form part of the same case or controversy or are derived from a common nucleus of operative facts.

7.       This Court has general personal jurisdiction over Hughes as he resides in Kenwood, California.

ORIGINAL COMPLAINT AND JURY DEMAND

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

8.     This Court has specific personal jurisdiction over Hughes since his contacts with California and jurisdiction are substantial, continuous, and systematic.  This action is based upon Hughes' activities that arise out of or are related to Hughes' activity in this district.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 at least because Hughes resides in this judicial district and a substantial part of the events giving rise to the claims asserted occurred in Sonoma and San Francisco Counties, California, which are counties within this district.

## DIVISIONAL ASSIGNMENT

10.     Pursuant to this Court's Civil Local Rules 3-2(c) and 3-5(b) and General Order No. 44, this action is subject to District wide assignment, as it is in an intellectual property action (trademarks).

## STATEMENT OF FACTS

### A.     Preliminary Statement.

11.     Courtney Benham ("Benham") is an experienced and highly successful wine entrepreneur in California.  *See* below, § B.  In 1991, he co-founded Blackstone Winery, which sold high quality Merlot for under twelve dollars a bottle.  In 2001, he and his cofounder sold Blackstone Winery to Constellation Brands for circa $140 million.  When sold, Blackstone was selling circa 650,000 cases.

12.     In the early 1990's, Benham came upon a cache of 1,500 cases of Martin Ray wine, bottled years prior.  Martin Ray was an early winemaker in California and departed from the then general practice of diffuse grape sourcing to instead making single sourced, high quality wines, labeled by the source and type of the grapes.  Benham tried the wine, thought it remarkable, and so bought the 1,500 cases cache, along with the Martin Ray name, and trademarks and all extant intellectual property.

13.     In 2013, Benham bought 48 acres of land, with 28 acres under vine, in Sonoma, formerly the fabled but then defunct Martini and Prati Winery.  This became the new venue for Martin Ray Winery.  Over the years, Benham invested literally millions of dollars in repairing and updating all the winemaking equipment, upgrading the vineyards, adding highly landscaped grounds for the wine tasters to relax, and so built an excellent brand with high brand recognition. *See* ¶¶ 33; 34 below.  MRW makes its wine at this facility as we write.

14.     Cameron Hughes ("Hughes") is a Napa and Sonoma based wine entrepreneur.  In 2020, he founded de Négoce (a play on the word "negociant;" *see* below).  The company sold wine directly to consumers (direct to consumers sales, or "DTC").

15.     In January and September 2023, and in two tranches, Hughes sold the de Négoce business, label, trademarks, and all intellectual property to MRW.  In the first sales transaction in January 2023, MRW acquired a 51% controlling interest in de Négoce.  MRW paid $10 million for this first tranche.  As of January 2024, MRW acquired the remaining 49% of de Négoce for an additional $2.5 million payment.  All-in, MRW paid $12.5 million for full ownership of the de Négoce brand, business, and all intellectual property.  *See* below § D.

16.     The original Sales Agreement, dated January 31, 2023, had a non-compete which provided as follows:

> (a) In consideration for the Purchase Price, during the Restricted Period, without the prior written consent of the Company, which may be granted or withheld by the Company in its sole discretion, subject to the exclusions described below in this section, Seller shall not directly or indirectly (i) own, engage in, manage, operate, control, establish or participate in the ownership, management, operation or control of, any entity, organization or individual that engages in any activity within the Target Area that is competitive to any reasonable extent with the Wine Business, or (ii) be a stockholder, agent, representative, partner, officer, director, joint venturer, member, manager, operator, employee, consultant or leader to any entity, organization or individua that engages in any activity within the Target Area that is competitive to any reasonable extent with the Wine Business.

MIPA at p. 32, Section 6.08.

Hosie Rice llp
149 New Montgomery Street, 4ᵀᴴ Floor
San Francisco, CA 94105

17.     In the second transaction, the 49% tranche, the scope of the non-compete was further defined as follows:

> It is agreed that under the **"Wine Business"** definition and Section 6.08 of the MIPA, it shall not be a breach of the non-compete conditions therein for Hughes to market and sell wine to wholesalers, distributors, or to wine retailers, **provided Hughes at no time sells wine direct to consumers.**

Amendment at 2, ¶ 1.C. (emphasis ours).  This Amendment made clear that, notwithstanding whatever else Hughes could do, he could not sell wine directly to consumers.

18.     The Amendment added a non-disparagement clause.  It reads as follows:

> Each Party covenants and agrees to refrain from all statements and conduct, verbal or otherwise and in any medium, that (i) disparage or damage or might tend to disparage or damage the reputation, goodwill, or good standing in the community….

Amendment at ¶ 15, p. 5.

19.     After selling his company in full to MRW, Hughes began to prepare to launch a directly competitive business, focused explicitly on the direct to consumers sales prohibited by the non–compete provision.  Specifically: Hughes secured a license to sell wine in October 2024, long before the covenant expired.  He created online terms of service on December 4, 2024 and then amended his Terms of Service on December 6, 2024.  He registered his new domain, "The Négociant," on December 4, 2024.  He had his competitive label and business poised and ready to launch in Q1 2025.

20.     The Hughes Négociant label is startlingly similar to the de Négoce label, which Hughes had sold to MRW.  Below is a side-by-side image of both bottles, with a bottle of Hughes' eponymous wine for contrast:

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105




21.    Note the swooping "N," a fanciful mark.  This "N" is essentially identical on both bottles.  Note the "e" with the accent acute, identical on both labels.  Note that the fanciful "g" is identical.  Note that the font is essentially the same on both labels, and the look and feel of the labels substantially identical.  The "Négociant" is just English for de [the] Négoce.  In short, Hughes simply copied the very label he had just sold.  (The bottle on the left reflects another Hughes wine offering.  This label makes plain that Hughes could design a non-infringing label if he cared to.).

22.     This copying did not just pose the risk of confusion, there is empirical evidence it was created by Hughes to steal back from MRW his former customers through exactly such confusion.  Indeed, Hughes' adherents laughed online about how he sold his business and then recreated that very business.  *See* below, ¶¶ 56, 57.

23.     Hughes launched his business on March 13, 2025, well within the non-compete period.  He began selling wine direct to consumers, conduct explicitly prohibited by the non-compete covenant.  As Hughes admitted online, he was forced to launch early given a March 13 Wall Street Journal brief article about the Négociant, his "new" wine sales company.  Specifically, through The Négociant website, Hughes is selling $1,000 cards for future wine deliveries, to be filled in the very near future.  These are sales, just with a deferred delivery date.

24.     Hughes also violated the non-disparagement covenant of the Amended Sales Agreement.  He and his adherents have systematically disparaged MRW, a violation of the non-disparagement clause.  *See* below § E.  And the Hughes label and trade dress infringe MRW's registered trademark and trade dress, giving rise to a variety of Federal Lanham Act claims.  *See* below, § F.

25.     If Hughes wanted to own de Négoce, he should not have sold it.  Yet he did, happily pocketing $12.5 million.

26.     MRW brings this action to right these wrongs.

**B.     The Evolution and Business of MRW.**

27.     Benham has had a long and storied career in the California wine industry.  He first learned the business working at his father's winery Lost Hill.  In 1990, he co-founded Blackstone Winery ("Blackstone").  Blackstone was essentially the first winery to offer high quality Merlot for (typically) under $12 a bottle.  By 2001, Blackstone was producing 650,000 cases of wine per year.

Hosie Rice llp
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

ORIGINAL COMPLAINT AND JURY DEMAND

28.     In 2001, Blackstone Winery was approached by Constellation Brands, then doing a "roll up" of smaller labels (buying and stacking different brands).  Ultimately, Constellation bought Blackstone for $140 million.

29.     Years earlier, Benham discovered a 1,500 case cache of older Martin Ray wine. Martin Ray was a pioneering California winemaker who produced single-varietal, region-specific wines from 1943 through 1972 in Saratoga in the heart of the Santa Cruz Mountains. Mentored by Paul Masson, Ray took a Burgundian approach to winemaking and was revolutionary in his insistence on producing 100% varietal wines when most California wines were generic blends.

30.     Ray was deeply committed to proving that California could produce world-class wines comparable to European offerings. He passed away in 1976, the same year as the famous Judgment of Paris wine tasting that validated his vision of California wines competing with the best wines from Europe

31.     At the time of Benham's wine warehouse discovery, the Martin Ray brand had been defunct since Martin Ray's death in 1976, with production continuing only into the early 1980s under Ray's widow Eleanor and his stepson Peter. The brand had essentially faded into obscurity until Benham's discovery and purchase of the brand.

32.     Benham started making wine under the Martin Ray label, staying true to Martin Ray's winemaking style, *i.e.*, Benham committed to producing artisanal wines worthy of the Martin Ray name, focusing on consistent, terroir-driven, 100% single-varietal wines.

33.     In 2013, as owner of MRW, Benham established a permanent home for the winery by purchasing one of California's oldest continuously operating wineries, Martini & Prati, located in the Russian River Valley of Sonoma County. The 48-acre estate is now the center of operations for Martin Ray Wines.

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

34.     While Martin Ray focused primarily on his Santa Cruz Mountains estate, Benham sources from hillside vineyards across diverse appellations including: the Russian River Valley, the Santa Cruz Mountains (honoring the original location), Napa Valley, Dry Creek Valley, and the Sonoma Coast.

35.     This expansion allowed Benham to tell "the story of each exceptional appellation and vineyard" while still adhering to Ray's commitment to terroir-driven wines.

36.     Benham's business model combines "terroir modern-day craftsmanship and hospitality" to create consistent top-tier wines that are accessible to more consumers while remaining true to Martin Ray's original ideology of "place first" and producing wines of elegance that transparently communicate terroir and vintage. Today, Martin Ray Winery produces this terroir-driven, single-varietal wines that reflect the exceptional qualities of California's diverse wine regions, staying true to Martin Ray's original vision while adapting to modern winemaking techniques.

37.     More recently, Benham has accelerated his acquisition activity, buying Healdsburg's Foppiano Vineyards in July 2024 and the Vina Robles brand in September.

38.     As of March 2025, Benham and his CMB Family of Wines continue to own and produce wines under the Martin Ray trademark, along with other brands, including Angeline, Synthesis, Foppiano, and Courtney Benham.  All are strong and distinctive brands.

## C.     Hughes' Wine Business.

39.     In 2001, Hughes established a wine-brokering firm with his then wife and business partner, Jessica Kogan.  To fund this venture, Hughes sold his personal collection of wine, which he had accumulated while working in wine sales where he benefitted from industry discounts. Initially, the couple invested in surplus wines, blended them, and sold the wine out of their Volvo.

40.    Hughes made his first significant sale to Costco, which became "Cameron Hughes Lot 1." This marked the beginning of his "lot concept" – buying wines out of tanks and barrels from famous wineries that could not sell their product, then selling them under his own name with lot numbers (*e.g.*, "Cameron Hughes Lot 218 Rutherford Cabernet Sauvignon 2008").

41.    Cameron Hughes Wine operates as a wine négociant, a person who specializes in the acquisition, re-blending, and marketing of fine wines under its own label—négociant means "trader" or "merchant." The company does not own vineyards or production facilities, which provides flexibility and low overhead to produce quality wines at competitive prices.

42.    As the business expanded, Hughes moved beyond just buying excess wine to also purchasing surplus quality grapes in abundant vintages and having wines made in custom crush facilities. The company acquired $3 million in mezzanine capital in 2008 to support its growth.

43.    On March 13, 2025, a Wall Street Journal reporter summarized Hughes' history in the wine business as follows:

> One of my early columns profiled Cameron Hughes, a California négociant who built a hugely successful brand thanks to the aforementioned wine glut. I first heard about Hughes at a dinner party of Chicago collectors in late 2009; a few months later I arranged a lunch with him in New York and purchased a case of his wines. Hughes was taking $100 bottles of first-rate Cabernet that had gone begging thanks to the glut and selling them for a fraction of their original price, under his own labels. For example, the 2007 Cameron Hughes lot 164 Rutherford Hills Cabernet Sauvignon sold for $22. These were remarkable wines for the price and quickly sold out. By 2015, the glut was over and the company was in receivership. (It was later acquired by Vintage Wine Estates).

Lettie Teague, *"I've Written This Wine Column for 15 Years. What's Changed – and What Hasn't,"* Wall Street Journal (March 13, 2025).

44.    Despite initial success, the company faced financial difficulties. In 2015, Cameron Hughes Wine was placed into receivership. By 2017, the company was acquired by Vintage Wine Estates in a bankruptcy court for 5.5 million. Hughes sold his original company and briefly ventured into the high-end steak business.

- 9 -

45.    In 2020, Hughes returned to the wine business when offered 100,000 gallons of 2018 Cabernet Sauvignon at an attractive price.  He launched a new project called OG de Négoce in 2020, continuing his négociant model.  He registered the de Négoce domain name on February 4, 2022.  This venture sourced wines from small, family-owned wineries and offered them at a reduced price of comparable boutique wines.

**D.    The Sales Transaction.**

46.    On February 8, 2023, MRW, Phoenix Wine Company, LLC, a California limited liability company ("Phoenix"), Eleveur LLC, a California limited liability company ("Eleveur") (MRW, Phoenix, and Eleveur collectively referred to as "MRW")  and Hughes, entered into the "Membership Interest Purchase Agreement" dated January 31, 2023, as amended April 25, 2023 and April 24, 2023 (the first "MIPA"), attached as Exhibit A. The MIPA provided that MRW purchased from Hughes and Hughes sold, assigned, conveyed, and delivered to MRW fifty-one (51%) of Hughes membership interests in the Company for $10 million.

47.    The MIPA contained a non-compete clause that reads as follows:

> (a) In consideration for the Purchase Price, during the Restricted Period, without the prior written consent of the Company, which may be granted or withheld by the Company in its sole discretion, subject to the exclusions described below in this section, Seller shall not directly or indirectly (i) own, engage in, manage, operate, control, establish or participate in the ownership, management, operation or control of, any entity, organization or individual that engages in any activity within the Target Area that is competitive to any reasonable extent with the Wine Business, or (ii) be a stockholder, agent, representative, partner, officer, director, joint venturer, member, manager, operator, employee, consultant or leader to any entity, organization or individua that engages in any activity within the Target Area that is competitive to any reasonable extent with the Wine Business.

MIPA at p. 32, Section 6.08.

48.    On September 26, 2023, the parties executed an AGREEMENT AND RELEASE IN FULL OF ALL CLAIMS AND RIGHTS ("second MIPA") attached as Exhibit B hereto.  Under this Agreement, MRW bought the remaining 49% of Hughes' de Négoce for $2.5 million.

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

49.    This reduced $2.5 million valuation for the remaining 49% reflected MRW's discovery, post-buying a controlling interest, that Hughes' financial statements were inaccurate, inventory was likewise inaccurate, and that there were other errors in the description of the business.  All-in, MRW paid Hughes $12.5 in cash.

50.    In pertinent part, the Amendment contained a non-compete covenant that stated as follows:

> It is agreed that under the **"Wine Business"** definition and Section 6.08 of the MIP, it shall not be a breach of the non-compete conditions therein for Hughes to market and sell wine to wholesalers, distributors, or to wine retainers, **provided Hughes at no time sells wine direct to consumers.**

Amendment at 2, ¶ 1.C. (emphasis ours).

51.    The Amendment also contained a non-disparagement clause, as follows:

> Each Party covenants and agrees to refrain from all statements and conduct, verbal or otherwise and in any medium, that (i) disparage or damage or might tend to disparage or damage the reputation, goodwill, or good standing in the community….

Amendment at ¶ 15, p. 5.

52.    The Amendment also contained a mandatory fee-shifting clause, as follows:

> <u>Attorneys' Fees</u>.  In the event of any controversy, claim or dispute following the date of the execution of this Agreement, in connection with or relating to this Agreement, or the subject matter hereof, the prevailing Party shall be entitled to recover all costs and expenses, including all reasonable attorneys' fees, expert witness fees, costs and expenses (including on appeal) incurred by the prevailing Party in connection therewith.

Amendment at ¶ 11, p. 4.

**E.    <u>Hughes' Misconduct.</u>**

53.    After the first MIPA transaction (MRW bought 51% of de Nêgoce), MRW hired Hughes to work as a consultant at MRW.  At a time unknown to Plaintiff, Hughes deleted a full year of his email traffic from the de Négoce server.

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

54.    Beginning in mid-2024, well within the covenant not to compete period, Hughes began to build a competitive direct to consumer wine business that would replace the business he just sold.  Specifically, and in rough chronological order, Hughes did the following:

- He secured a permit to sell wine in late 2024;

- He registered his new domain name on December 4, 2024;

- He created Terms of Service on December 4, 2024, and amended his Terms of Service on December 6, 2024; and,

- At some point in late 2024 or early 2025, Hughes created his "The Négociant" label by copying the de Négoce label he had just sold to MRW.

55.    On March 13, the Wall Street Journal ran an article about the coming "The Négociant business."  As Hughes himself stated online, this publication "pushed me out of the gate a little early" as seen below in the Wine Berserkers' thread:





*See* www.wineberserkers.com/t/negociant-wine-company/334139/83.

56.    Immediately upon Hughes unveiling, his new company was the subject of two threads in a prominent wine aficionado site, "Wine Berserkers."  These comments, all real-time, are illuminating.  To quote:

ORIGINAL COMPLAINT AND JURY DEMAND

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

- "It's really mind boggling. Within a year, Cam will have cashed out, started a new brand using pretty much the same look, feel, go-to-market, etc. and steal back a chunk of his old customers. Props to his legal team.

- "Did he [Hughes] really only have a 1 year non-compete…?"

- "but seriously how do you acquire a company and let the seller start an almost identical one this soon (with almost the same name to boot)?!"

- "What are the chances the author (of the WSJ short piece) confused négociant wine company with de négoce? It's odd that the article doesn't mention de négoce at all."

- On copying: "Duuude…. Even the font! That's awesome, great move on those lawyers!!!"

- "The noncompete is over let's f…ing go boys."

*See* www.wineberserkers.com/t/negociant-wine-company/334139 and www.wineberserkers.com/t/de-negoce-offer-part-2/285868/11851. Almost all of the people posting on the threads were then current de Négoce customers.

57.    There was not just the possibility of consumer confusion here: these sophisticated consumers saw the great similarities and believed that Hughes created the Négociant brand and business to regain the de Négoce business he had just sold to MRW.

58.    The non-compete was, in fact, far from over. In no way did MRW authorize or permit Hughes to move forward with his copied label and business model: Hughes just did so, covenant-not-to compete notwithstanding.

59.    This conduct violates the non-compete MIPA provision. This conduct provides the basis for the Breach of Contract claims alleged here.

**F.    Deliberate Copying – The Lanham Act Claims.**

60.    Hughes designed his label and website to knock-off the de Négoce site. This was deliberate and willful misconduct.

61.    On the label, as alleged above, the similarities are striking. The highly stylized upper case "N" in both the de Négoce and The Négociant labels are near identical. The swoping "N" and

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

the "N" tilting to the right are essentially identical. There is the stylized and fanciful mark entitled to strong protection. The "e's" are identical, including the stylized accent acute, as are other letters. The look and feel are at least confusingly similar. The color scheme on both labels is the same. This could not have been a coincidence: it is apparent that Hughes simply copied the de Négoce label.

62.    So, too, the Hughes Négociant website. Here is a screenshot:



63.    The site prominently displays the infringing name with its distinctive font. And the site makes plain that The Négociant intended to replicate in full the de Négoce business model.

**G.    The Registered de Négoce Trademark.**

64.    A "wine négociant" is a term used in the wine industry, particularly in France, to refer to wine merchants who buy and sell wine. In the Champagne region, for example, there is a designation "ND: Négociant-Distributeur" which refers to an "individual or company (usually a wine merchant) that buys in finished bottles of Champagne and labels them in their own name, on their own premises."

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

65.    The de NÉGOCE registered trademark is currently active and owned by MRW (previously owned by Phoenix Wine Company, LLC, based in San Francisco, California). The trademark was registered with the USPTO on February 8, 2022, with the registration number 6637778. The mark consists of "de NÉGOCE" in stylized form and is registered for use with wine products (International Class 033). The trademark application was filed on March 16, 2021, and the mark had been in use in commerce since June 8, 2020. The trademark is registered on the Principal Register, which provides the strongest protection available for trademarks in the United States.

66.    The trademark application was filed on March 16, 2021, and the mark had been in use in commerce since June 8, 2020. The trademark is registered on the Principal Register, which provides the strongest protection available for trademarks in the United States.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Counterfeiting-15 U.S.C. § 1114(1)
### (By MRW Against All Defendants)

67.    MRW hereby incorporates by this reference each and every preceding allegation as if set forth fully herein.

68.    Defendant's use of The Négociant label is a spurious mark which is identical with, confusingly similar, or substantially indistinguishable from, the de Négoce Mark.

69.    Defendant's unauthorized use and copying of the de Négoce Mark in connection with The Négociant mark constitutes use in commerce of a counterfeit MRW product under 15 U.S.C. §§ 1114(1), 1116(d), and 1127.

70.    Defendant's unauthorized use and copying of the de Négoce Mark is likely to cause confusion, to cause mistake, and to deceive purchasers, potential purchasers, and the public.

71.    MRW has been damaged and continues to be damaged proximately by Defendant's unauthorized use and copying of the de Négoce Mark.

Hosie Rice llp
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

72.    Defendant has profited from its unauthorized use and copying of the de Négoce Mark.

73.    Unless Defendant is enjoined, MRW's business, goodwill, and reputation will suffer irreparable harm.

74.    Defendant's unlawful acts described herein are willful, wanton, intentional, and undertaken in bad faith, making this an exceptional case pursuant to 15 U.S.C. § 1117 entitling MRW to recover statutory damages or actual damages in an amount to be proven, treble damages, additional damages, and attorneys' fees.

75.    Hughes is in direct competition with MRW in the market related to sourcing bulk wines and selling them at a discount to the public despite an agreement not to compete between the parties currently in effect.

76.    Hughes markets and promotes its wines to the same class of consumer that purchases MRW's de Négoce wines.

77.    Hughes has purposely copied the de Négoce Mark to unlawfully benefit from MRW's goodwill in the marketplace.

78.    Hughes has relied, and will continue to rely, on MRW's goodwill, consumer negotiation, marketing, promotion, and advertising of MRW's de Négoce's wines so that Hughes can enhance sales of its wines.

79.    MRW has no control over the nature, quality, or pricing of the wines provided by Hughes using the MRW de Négoce Mark.

80.    MRW's mark is inherently distinctive.  To the extent it is descriptive, MRW's Mark acquired secondary meaning among the relevant consuming market and has become distinctive before Hughes commenced using the MRW de Négoce Mark since its purchase from Hughes.

81.   Hughes' use of the de Négoce Mark in connection with its wines is likely to harm the distinctive quality of the de Négoce Mark and to decrease the capacity of that mark to identify and distinguish MRW's products, and likely to cause harm to MRW's business reputation.

82.   Hughes' use of MRW's de Négoce Mark on its product is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Hughes with MRW in the marketplace.

83.   Even if consumers eventually come to realize that they have not purchased a MRW de Négoce wine, Hughes is intentionally causing initial interest confusion to benefit from MRW's goodwill and strong marketplace recognition developed since Hughes' sale to MRW.

84.   Hughes' conduct complained of herein has been done and is done with the intent to cause confusion, mistake or deception as to the source or affiliation of the parties' respective products.

85.   Hughes has misappropriated MRW's substantial property rights in the de Négoce Mark, as well as the substantial goodwill associated therewith.  Unless restrained and enjoined by this Court, such conduct will permit Hughes to gain an unfair competitive advantage over MRW, and permit Hughes to enjoy the interest and marketing power over MRW.

86.   If Hughes is permitted to continue using, promoting, marketing advertising, distributing and selling products using The Négociant, its actions will continue to cause irreparable injury to MRW, to the distinctiveness of the de Négoce Mark, and to the goodwill and business reputation associated with the de Négoce label.

87.   Hughes is using the de Négoce Mark with full knowledge of the de Négoce Mark. As such, its conduct is willful.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Infringement (Lanham Act: 15 U.S.C. § 1114)
### (By MRW Against All Defendants)

88.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

89.    15 U.S.C. § 1114(1)(a) prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

90.    The de Négoce Mark is a valid, protectible service mark that has been registered as a mark on the principal register in the United States Patent and Trademark Office.

91.    MWR is the owner of U.S. Trademark Registration Number 6637778 representing certain rights associated with the de Négoce Mark.

92.    MRW's de Négoce Mark is distinctive and associated in the minds of relevant consumers with MRW's goods.

93.    Additionally, based on MRW's extensive advertising, sales, and the popularity of its products, MRW's de Négoce Mark has acquired secondary meaning to the extent that the relevant consumer associates the de Négoce Mark exclusively with MRW.

94.    The Defendant has used the de Négoce Mark in connection with the advertising, sale, offering for sale, and distribution of its goods for its own financial gain.

95.    The Defendant is not authorized by MRW to use the de Négoce Mark.

96.    The Defendant's unauthorized use of the de Négoce Mark on or in connection with the advertising and sale of its goods constitutes use of MRW's registered mark in commerce.

97.    Defendant's unauthorized use of the de Négoce Mark is likely to cause confusion, mistake, or deceive; causing the public to believe that MRW has authorized, sponsored, approved, or otherwise associated itself with Hughes or its knock-off products using the de Négoce Mark. Even "[i]nitial interest confusion occurs when the defendant uses the plaintiff's trademark in a

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

manner calculated to capture initial consumer attention, even though no actual sale is finally

completed as a result of the confusion." *Interstellar Starship Services, Ltd. v. Epix*, 304 F.3d 936,

941 (9th Cir. 2002) (internal citations and quotation marks omitted).

98.    By engaging in these activities, Defendant has engaged in trademark infringement

pursuant to 15 U.S.C. § 1114(1)(a).

99.    MRW has suffered actual damages as a result of Defendant's trademark infringement

in an amount to be proven at trial. Additionally, the harm to MRW arising from Defendant's acts is

not fully compensable by money damages. MRW has suffered, and continues to suffer, irreparable

harm that has no adequate remedy at law and that will continue unless Defendant's conduct is

preliminarily and permanently enjoined.

100.    Because of Defendant's infringement of the de Négoce Mark, MRW is entitled to an

injunction, as set forth below, and an order of destruction of all of Defendant's infringing materials.

101.    MRW has been and continues to be damaged by Defendant's infringement.

102.    On information and belief, Defendant has sold at least 82 self-reported customer

transactions at $1,000 per transaction for a total of $82,000 on the negociantwine.com website in

the form of gift cards.  Hughes has personally confirmed on March 25, 2025 that his member count

was around 75 for $75,000.

103.    Upon information and belief, Defendant's use of a confusingly similar trademark is

willful and intentional.

104.    As a consequence of Defendant's willful infringement, MRW is entitled to recover

from Defendant three times the amount of actual profits or damages, whichever is greater, as well as

MRW's attorneys' fees and costs incurred in connection with this Action.

### THIRD CLAIM FOR RELIEF

**Unfair Competition (Lanham Act: 15 U.S.C. § 1125(a))**
**(By MRW Against All Defendants)**

105.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

106.    15 U.S.C. § 1125(a) provides, in relevant part, that:

> Any person who… in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to  cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

107.    By making unauthorized use, in interstate commerce, of the de Négoce Mark, Defendant is likely to cause confusion, mistake or deception as to the affiliation or connection of Defendant with MRW as to the origin, sponsorship, association or approval of MRWs' goods in violation of 15 U.S.C. § 1125(a).

108.    Defendant's acts constitute use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendant's products as those of MRW in violation of 15 U.S.C. § 1125(a).

109.    Defendant's wrongful acts will continue unless enjoined by this Court.

110.    Defendant's acts have caused and will continue to cause irreparable injury to MRW. MRW has no adequate remedy at law and is thus damaged in an amount yet to be determined.

111.    Defendant's conduct in selling infringing products is willful and intentional.

112.     Defendant's acts constitute false statements in connection with products and/or services distributed in interstate, commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

113.    Defendant's acts have caused irreparable injury to MRW's goodwill and reputation. The injury to MRW is and continues to be ongoing and irreparable.  An award of monetary

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

damages alone cannot fully compensate MRW for its injuries and MRW lacks an adequate remedy at law.

114.    MRW is entitled to an injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### Dilution of a Famous Mark (15 U.S.C. § 1125(c))
### (By MRW Against All Defendants)

115.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

116.    The de Négoce Mark is a famous trademark within the meaning of the Anti-Dilution Act 15 U.S.C. § 1125(c).  The de Négoce Mark "is famous if it is widely recognized by the general consuming public of the United States as a designation of source of goods or services of the mark's owner." *Id.*

117.    As a result of Defendant's use of The Négociant mark and trade name in commerce over which MRW has no control, the distinctive qualities of the de Négoce Mark is being and will continue to be diluted.

118.    Defendant's acts have diluted and will continue to result in the dilution of the distinctive nature of the de Négoce Mark through blurring, in violation of 15 U.S.C. § 1125(c).

119.    Defendant's conduct constitutes an extreme threat to the distinctiveness of the de Négoce Mark that MRW has expended great efforts to develop and maintain.

120.    The distinctive nature of the de Négoce Mark is of enormous value, and MRW is suffering and will continue to suffer irreparable harm and blurring of the de Négoce Marks if Defendant's wrongful conduct is allowed to continue.

Hosie Rice llp
149 New Montgomery Street, 4ᵗʰ Floor
San Francisco, CA 94105

ORIGINAL COMPLAINT AND JURY DEMAND

121.    The dilution of the de Négoce Mark will likely continue unless the Court orders injunctive relief against Defendant.

122.    MRW is entitled to an injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Cybersquatting (15 U.S.C. § 1125(d))
### (By MRW Against All Defendants)

123.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

124.    Defendant's December 4, 2024 registration and operation of the internet domain name thenegociantwine.com is identical to, or confusingly similar to and dilutive of the de Négoce Mark and the MRW website, denegoce.com.

125.    Defendant's thenegociantwine.com domain name and label are confusingly similar to MRW's denegoce.com website and the protected de Négoce Mark as Defendant's domain name and label incorporate[s] the mark and/or it "add(s), delete(s), or rearrange(s) letters in the mark."

126.    The de Négoce Mark is famous, and was famous before Defendant began the offending commercial activities complained of in this Action.

127.    Defendant has registered and operated the thenegociantwine.com domain with a bad faith intent to profit from the de Négoce Mark and denegoce.com website.  The website is currently active and taking reservations and payment for membership and for its wine offerings.  The website is giving members access to exclusive, ultra-premium wines at a discount.  Defendant has set up a reservation system online for wines likely to sell out quickly.

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

128.    Defendant has sold at least 82 founding memberships on the negociantwine.com website in the form of gift cards.  The Nègociant has currently transacted at least $82,000 per customer self-reporting.

129.    Defendant is offering founding members (1) first access to new wine offers; (2) exclusive offers not available to regular members; and (3) an opportunity to participate in pre-release barrel-sampling tastings on "The Roxy," Hughes' floating tasting room.

130.    Defendant's conduct described above, including its use in commerce of the thenegociantwine.com internet domain, is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation or approval of Defendant's services,  Further, Defendant's acts described above constitute false representations of fact that are likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's services.

131.    As a consequence of Defendant's willful infringement, MRW is entitled to recover from Defendant three times the amount of actual profits or damages, whichever is greater, as well as MRW's attorneys' fees incurred in connection with this action.

132.    Because this is an exceptional case, MRW is entitled to recover its attorneys' fees incurred in connection with this action under 15 U.S.C. § 1117(a).

### SIXTH CAUSE OF ACTION

**Unfair Competition (Cal. Bus. & Prof. Code § 17200, et seq.)**
**(By MRW Against All Defendants)**

133.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

134.    Defendant has engaged in unlawful business acts or practices by committing illegal acts and practices as alleged herein, all in an effort to gain unfair competitive advantage over MRW.

135.    These unlawful business acts or practices were committed pursuant to business activity related to The Négociant's website sales, offerings for sale, distribution or advertising of

any goods or services and mark which violate 15 U.S.C. § 1141(1) and 1125(a)(1).

136.    The acts and conducts of Defendant constitute fraudulent, unlawful, and unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*.

137.    Defendant's conduct constitutes violations of numerous state and federal statutes and codes, including but not limited to, state false advertising laws, including Cal. Bus. & Prof. Code § 17500.

138.    Defendant's unfair business practices has unjustly harmed MRW and are causing MRW to suffer damages.

139.    As a result of such unfair competition, MRW has also suffered irreparable injury and unless Defendant is enjoined from such unfair competition, will continue to suffer irreparable injury, whereby MRW has no adequate remedy at law.

140.    Defendant should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* including but not limited to returning any revenue earned from the unlawful and unfair offerings, memberships and sales of The Négociant, and should be enjoined from further unlawful, unfair and deceptive business practices.

## SEVENTH CAUSE OF ACTION

### False Advertising (Cal. Bus. & Prof. Code § 17500)
### (By MRW Against All Defendants)

141.    MRW incorporates by this reference each and every preceding allegation as if set forth fully herein.

142.    MRW owns all right, title, and interest in and to the de Nêgoce Mark described above, including all common law rights associated therewith.

143.    MRW has suffered injury-in-fact as a result of Defendant's false advertising in the form of lost sales, lost profits, actual damages, and confusion in the marketplace regarding the

Hosie Rice llp
149 New Montgomery Street, 4ᵗʰ Floor
San Francisco, CA 94105

nature of the services offered by Defendant.

144.    Defendant's acts described above have greatly and irreparably damaged MRW and will continue to damage MRW unless enjoined by this Court.  Accordingly, MRW is entitled to an injunction under California Business and Professions Code § 17535, as well as restitution and disgorgement of Defendant's profits.

145.    MRW owns the de Négoce Mark and has not authorized Defendant to use its trademarks in connection with The Négociant goods and services.

## EIGHTH CAUSE OF ACTION

### Trademark Infringement – California Common Law
### (By MRW Against All Defendants)

146.    MRW incorporates by this reference each and every preceding allegation as if set forth fully herein.

147.    MRW owns all the rights, title, and interest in and to MRW's de Négoce Mark described above, including all common law rights associated therewith.

148.    Upon information and belief, the offerings, memberships, and sales by Defendant misappropriate MRW's common law trademark rights in the de Négoce Mark.  Defendant's use of the de Négoce Mark is unauthorized, and is likely to cause consumer confusion.

149.    Upon information and belief, by the acts described above, Defendant has engaged in trademark violation of the common law of the State of California.

150.    Upon information and belief, Defendant's acts have caused, and will continue to cause, irreparable injury to MRW.  MRW has no adequate remedy at law and is thus damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Unfair Competition – California Common Law
### (By MRW Against All Defendants)

151.    MRW incorporates by this reference each and every preceding allegation as if set

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

forth fully herein.

152.    Upon information and belief, Defendant has palmed off its goods and services as those of MRW, improperly trading upon MRW's goodwill and valuable rights in and to the de Négoce Mark.

153.    Upon information and belief, Defendant committed the above alleged acts willfully, and in conscious disregard of MRW's rights.  Accordingly, MRW is entitled to exemplary and punitive damages pursuant to the common law of the State of California in an amount sufficient to punish and deter Defendant.

154.    Upon information and belief, by the acts described above, Defendant has engaged in unfair competition in violation of the common law of the State of California.

155.    Upon information and belief, Defendant's acts have caused, and will continue to cause, irreparable injury to MRW.  MRW has no adequate remedy at law and is thus damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### Breach of Contract
### (By MRW Against All Defendants)

156.    MRW incorporates by this reference each and every preceding allegation as if set forth fully herein.

157.    Defendant agreed to be bound by both the MIPA (*see* Exhibit A) and the Agreement of All Claims and Rights (*see* Exhibit B) (hereafter "Contracts").

158.    MRW has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contracts.

159.    Defendant failed to perform his obligations under these contracts as alleged in ¶¶ 19-25 and 48-59.

160.    As a result of Defendant's breach of the two contracts, Defendant has caused

monetary and reputational damage to MRW in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### Intentional Interference With Contractual Relations
### (By MRW Against All Defendants)

161.    MRW incorporates by this reference each and every preceding allegation as if set forth fully herein.

162.    MRW has pre-existing business relationships with new customers of the negociantwine.com website.

163.    Defendant is aware of the existing MRW business relationships.

164.    Defendant has intentionally acted to disrupt MRW business relationships.  As an example, Defendant stated in the office that the Board would not like a Chuck or Courtney [Benham] – directed business decision.  Later in 2023, Defendant began leaking de Négoce company's structure and internal data, personal data, contracts, sensitive and confidential company data on the public de Négoce Wine Berserker's online discussion forum.

165.    As a result of Defendant's actions, MRW has been harmed.

166.    Defendant's conduct was a substantial factor in causing MRW harm.

167.    MRW has suffered damages as a result of this interference to MRW's business.

## TWELFTH CLAIM FOR RELIEF

### Slander
### (By MRW Against All Defendants)

168.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

169.    Defendant has made false statements defaming MRW.

170.    Defendant has made statements that have been published and/or communicated to third parties as follows: In June 2023, Defendant who still worked as a consultant for MRW called an MRW employee and told him that "He cannot trust Courtney [Benham] or Chuck."  Defendant

Hosie Rice LLP
149 New Montgomery Street, 4th Floor
San Francisco, CA 94105

stated to this MRW employee that a new employee was hired without Defendant's knowledge.  This statement was false; Defendant had known about this hire for months.  In the call, he further stated to the MRW employee that if he was ever to work in the business again, he needed to be loyal to Defendant, not Benham.  Defendant falsely stated that Defendant had hired the MRW employee into the industry and if he "worked for Courtney or Chuck further, he would never work in the industry again."

171.    These statements have been made with actual malice.

172.    MRW has suffered damages as a result of the slanderous statements.

## THIRTEENTH CAUSE OF ACTION

### Unjust Enrichment/Restitution
### (By MRW Against All Defendants)

173.    MRW incorporates by this reference each and every preceding allegation as if set forth fully herein.

174.    Defendant unjustly received benefits at MRW's expense and through its wrongful conduct, including its breach of contract, interference with MRW's business relationships, and other unfair business practices.  Defendant continues to unjustly retain these benefits at MRW's expense. It would be unjust for Defendant to retain any value he obtained as a result of his wrongful conduct.

175.    MRW is entitled to the establishment of a constructive trust consisting of the benefit conferred upon Defendant by the revenues derived from his wrongful conduct at MRW's expense, and all profits derived from that wrongful conduct.  MRW is further entitled to full restitution of all amounts in which Defendant has been unjustly enriched at MRW's expense.

## FOURTEENTH CLAIM FOR RELIEF

### Accounting
### (By MRW Against All Defendants)

176.    MRW incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

177.    Since at least December 4, 2024, Defendant has obtained business through unlawful conduct, as alleged in this Complaint.

178.    Defendant has received contracts and money as a result of his misconduct, at MRW's expense, at some or all such money is rightfully due to MRW.

179.    The amount of money due from Defendant to MRW cannot be ascertained without an accounting of the income and gross profits Defendant has obtained through their wrongful and unlawful conduct, MRW is entitled, therefore, to a full account.

## PRAYER FOR RELIEF

Wherefore, MRW respectfully requests that the Court enter the following:

1.    For a preliminary and permanent injunction ordering Defendant, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them, to:

a.    An order granting MRW preliminary and permanent injunctive relief enjoining Defendant, his agents, servants, employees, successors, and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, from directly or indirectly using any mark confusingly similar to the de Négoce Mark in commerce without limitation.

b.    Cease and desist and take down thenegociantwine.com domain site;

c.    Provide information sufficient to identify each customer and payment Defendant has received from thenegociantwine.com offerings, memberships and/or sales; and,

d.    State the amount of money, both gross and net, Defendant has received from the offerings, memberships, and sales they have made from thenegociantwine.com domain.

ORIGINAL COMPLAINT AND JURY DEMAND

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

2.      An order that Defendant is to pay damages to MRW, including statutory and/or actual damages, pursuant to § 1117 and/or California law, in an amount to be determined by the Court;

3.      An order finding that Defendant has engaged in trademark counterfeit, and/or cyber squatting, trademark infringement, unfair competition, deletion of a famous mark, and/or pursuant to 15 U.S.C. §§ 1114, 1125, and/or California common law;

4.      An order finding that Defendant has engaged in unfair competition pursuant to Cal. Bus & Prof. Code § 17200;

5.      An order finding that Defendant has engaged in false advertising pursuant to Cal. Bus. & Prof. Codes § 17500;

6.      An order that Defendant has engaged in trademark and unfair competition trademark infringement in violation of the common law of the State of California;

7.      On order that Defendant has breached the contract(s) with MRW;

8.      An order that Defendant has intentionally interfered with contractual relations with MRW;

9.      An order that Defendant has committed slander against MRW;

10.     An order finding that Defendant's acts were done willfully and/or intentionally;

11.     An order granting MRW an equitable accounting of Defendant's profits form the offerings, memberships, and sales on thenegociantwines.com;

12.     For an order requiring Defendant to file and serve on MRW a written declaration, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

13.     An order that MRW be awarded treble damages pursuant to Defendant's violation of the Lanham Act;

14.     For prejudgment and post-judgment interest;

ORIGINAL COMPLAINT AND JURY DEMAND

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105

15.     For an order compelling Defendant to engage in corrective advertising;

16.     For an order awarding MRW its attorneys' fees and costs;

17.     For an order awarding MRW compensatory damages, disgorgement of profits, restitution and/or punitive damages in a sum to be determined at trial;

18.     For an order cancelling or causing Defendant to forfeit the thenegociantwine.com website, or transfer the thenegociantwine.com website name to MRW as owner of the de Négoce Mark; and,

19.     For an order awarding MRW such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that by jury of all claims and issues alleged in this Complaint are triable to a jury.

Date:    March 28, 2025                          Respectfully submitted,


                                                 *Spencer Hosie*
                                                 SPENCER HOSIE
                                                 shosie@hosielaw.com
                                                 DIANE S. RICE
                                                 drice@hosielaw.com
                                                 DARRELL R. ATKINSON
                                                 datkinson@hosielaw.com
                                                 HOSIE RICE LLP
                                                 149 New Montgomery Street, 4th
                                                 Floor
                                                 San Francisco, CA 94105

                                                 Attorneys for Plaintiff
                                                 MARTIN RAY WINERY, INC.

HOSIE RICE LLP
149 NEW MONTGOMERY STREET, 4TH FLOOR
SAN FRANCISCO, CA 94105