# EXHIBIT B

# AGREEMENT AND RELEASE
# IN FULL OF ALL CLAIMS AND RIGHTS

This AGREEMENT AND RELEASE IN FULL OF ALL CLAIMS AND RIGHTS (hereinafter, referred to as this "**Agreement**") is made and entered into as of September 26, 2023 (the "**Effective Date**"), by and among Martin Ray Winery, Inc., a California corporation ("**MRW**"), Cameron Hughes, an individual ("**Hughes**"), Phoenix Wine Company, LLC, a California limited liability company (the "**Company**"), and Eleveur LLC, a California limited liability company ("**Eleveur**"). MRW, the Company, and Eleveur are collectively referred to herein as the "**MRW Parties**". The MRW Parties and Hughes may each be referred to in this Agreement as a "**Party**," and collectively, as the "**Parties**."

## RECITALS

A.  WHEREAS, on February 8, 2023, the Company, Hughes, and MRW entered into that certain Membership Interest Purchase Agreement dated January 31, 2023, as amended April 25, 2023 and April 24, 2023 (the "**MIPA**"), whereby MRW purchased from Hughes and Hughes sold, assigned, conveyed, and delivered to MRW fifty-one percent (51%) of Hughes's membership interests in the Company. The Parties concurrently entered into several other agreements to consummate the transactions contemplated in the MIPA, including: (i) that certain First Amended and Fully Restated Operating Agreement of Phoenix Wine Company, LLC, dated January 31, 2023, by and between Hughes and MRW (the "**Phoenix Operating Agreement**"); (ii) the Trademark License Agreement, dated February 8, 2023, by and among Eleveur and the Company (the "**TM License**"); (iii) the Membership Interest Assignment Agreement, dated January 31, 2023 (the "**Membership Assignment**"); (iv) the Operating Agreement of Eleveur LLC, dated January 31, 2023, by and between MRW and Hughes (the "**Eleveur Operating Agreement**"); (v) the Name and Likeness Agreement, dated January 31, 2023, by and between the Company and Hughes (the "**Likeness Agreement**"); (vi) the Consulting Agreement, dated February 8, 2023, by and between the Company and Hughes (the "**Consulting Agreement**"); and (vii) the Assignment of Trademarks, dated February 8, 2023, made by the Company for the benefit of Eleveur. The MIPA, collectively with the agreements listed in Recitals A(i)-(vii), shall be collectively referred to herein as the "**Transaction Documents**." The transactions contemplated in and consummated by the Transaction Documents shall be referred to herein as the "**Transaction**."

B.  WHEREAS, in consideration of the terms and conditions set forth below, the Parties now wish for Hughes to sell, assign, convey, and deliver one-hundred percent (100%) of his forty-nine percent (49%) membership interest in the Company and one-hundred percent (100%) of his forty-nine percent (49%) interest in Eleveur (collectively "**Hughes's Interests**") to MRW, for which MRW shall pay to Hughes the sum of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "**Payment**").

C.  WHEREAS, the Parties further agree to the terms and conditions set forth below:

## TERMS OF AGREEMENT

NOW THEREFORE, in consideration of the foregoing Recitals (which are hereby incorporated into and shall be deemed part of this Agreement), the covenants and agreements hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

1. Consideration.

   a. Payment. On January 1, 2024 (the "**Payment Date**"), MRW shall pay to Hughes, by wire in immediately available funds to an account designated by Hughes, the Payment. The Payment shall be payable and due to Hughes on the Payment Date and may not be held back in whole or in part by MRW on the basis of any alleged actual or potential breach of this Agreement.

   b. Transfer of Hughes' Interest. On the Effective Date, Hughes shall assign and transfer one hundred percent (100%) of Hughes's Interests to MRW (the "**Assignment**"). The Assignment shall be evidenced by the assignments of membership interests executed by Hughes in the forms attached hereto as Exhibit A and Exhibit B.

   c. Amendments to the MIPA.

      i. The Restricted Period (as defined in the MIPA) shall be stricken in its entirety and replaced with the following:

         "**Restricted Period**" means the period beginning on the Effective Date as defined in that certain Agreement and Release in Full of All Claims and Rights, by and among Hughes, MRW, Eleveur, and the Company, dated September 26, 2023, and terminating twenty-one (21) months thereafter.

      ii. It is agreed that under the "**Wine Business**" definition and Section 6.08 of the MIPA, it shall not be a breach of the non-compete conditions therein for Hughes to market and sell wine to wholesalers, distributors, or to wine retailers, provided Hughes at no times sells wine direct to consumers.

   d. Termination of Consulting Agreement. Effective immediately, the Consulting Agreement and all rights and obligations therein shall be terminated.

   e. Mutual Release. As a material component of the consideration given and received by the Parties in connection with this Agreement, the Parties each acknowledge and agree to the mutual release provisions contained in Section 2, below.

2. Mutual General Release. Subject to timely payment and performance of the obligations set forth in Section 1, above, the MRW Parties, on the one hand, and Hughes, on the other hand, for themselves, their affiliates, heirs, successors and assigns, do hereby release and discharge each other, and their respective shareholders, directors, officers, members, managers, partners, general partners, owners, lenders, employees, representatives, heirs, executors,

administrators, predecessors-in-interest, successors, assigns, agents and attorneys, of and from any and all claims, demands, debts, obligations, damages, liabilities, costs, expenses, including all reasonable attorneys' fees, expert witness fees, costs and expenses (including on appeal), rights of action, causes of action, awards and judgments of any kind or character whatsoever ("**Claims**") arising in whole or in part prior to the Effective Date, or which may hereafter be claimed to arise in whole or in part out of any action, inaction, event or matter occurring prior to the Effective Date, all of which are hereinafter called, "**Released Claims**.

The Released Claims include, but are not limited to, any and all Claims arising out of the Transaction, any Claims which could have been brought, or which have or could have been brought in the action, or any other Claims that the Parties had, have, or may have against each other prior to the Effective Date.

Each of the Parties acknowledges and agrees that the Released Claims may include Claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true. Nevertheless, the Parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive any and all rights provided in California Civil Code Section 1542 which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

| _CB_ | _CH_ |
|---|---|
| **MRW PARTIES' INITIALS** | **HUGHES'S INITIALS** |

3. <u>Contractual Indemnity</u>. Each Party shall indemnify and hold harmless the other Party from and against any cost, liability, damage or loss, including all reasonable attorneys' fees, expert witness fees, costs and expenses (including on appeal) incurred in connection therewith, incurred directly or indirectly by reason of the falsity or inaccuracy of any representation made herein by it. Each Party shall further indemnify and hold the other Party harmless from and against any cost, liability, damage or loss, including all reasonable attorney's fees, expert witness fees, costs and expenses (including on appeal) in connection therewith, arising out of or in any way related to any claim made against the other Party, which claim has been released pursuant to <u>Section 2</u>, above. In the event any action or proceeding is instituted upon a claim which has been released pursuant to <u>Section 2</u>, above, this Agreement may be pleaded as a full and complete defense to any such action or proceeding as the basis for abatement of, or injunction against, any such action or proceeding, or as the basis of a cross-complaint for damages.

4. <u>Binding on Successors</u>.  This Agreement shall inure to the benefit of and shall bind the Parties and their respective representatives, heirs, executors, administrators, successors, assigns, families, partners, employers, employees, officers, directors, shareholders and agents.

5. <u>Covenant of Further Assurances</u>.  The Parties each covenant and agree to execute and deliver all such documents, instruments and agreements, and to perform all such acts as may be necessary, appropriate or reasonably required to carry out the purposes and provisions of this Agreement.

6. <u>Final Agreement</u>.  This Agreement supersedes all prior negotiations and understandings of any kind with respect to the subject matter hereof and contains all of the terms and provisions of the Agreement between the Parties with respect to the subject matter hereof.

7. <u>Governing Law</u>.  This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of California.  If any civil action is filed to enforce or interpret any of the terms or provisions of this Agreement, or otherwise, the Parties agree that the appropriate venue shall be a state court of competent jurisdiction located in the County of Sonoma, State of California.

8. <u>Severability Provision</u>.  If any provision of this Agreement is unenforceable, for any reason, the remaining provisions shall nevertheless be of full force and effect.

9. <u>No Admission of Liability</u>.  Execution of this Agreement does not constitute evidence of, and shall not be construed to be, an admission of liability and/or wrongdoing by any Party.

10. <u>Enforceability Under Section 664.6 of the Code of Civil Procedure</u>.  The Parties agree that any and all terms of this Agreement may be enforced pursuant to a motion brought under CCP Section 664.6.

11. <u>Attorneys' Fees</u>.  In the event of any controversy, claim or dispute following the date of the execution of this Agreement, in connection with or relating to this Agreement, or the subject matter hereof, the prevailing Party shall be entitled to recover all costs and expenses, including all reasonable attorneys' fees, expert witness fees, costs and expenses (including on appeal) incurred by the prevailing Party in connection therewith.

12. <u>Modification</u>.  This Agreement may be modified only by a subsequent document in writing, signed by the Party to be charged thereunder.

13. <u>Headings</u>.  The paragraph headings of this Agreement are provided for the ease of reference only and shall have no effect on its interpretation.

14. <u>Agreement Mutually Negotiated</u>.  This Agreement has been negotiated between the Parties and has been thoroughly reviewed by each Party and their respective attorneys.  Each Party has had an opportunity to make such changes as that Party wished to make.  Accordingly, the Parties agree that, for purposes of interpreting this Agreement, no Party shall be deemed to have drafted this Agreement and each Party waives the rule of contract construction which provides that ambiguities

in the contract shall be construed against the Party who drafted the Agreement or otherwise caused the ambiguity to exist. The Parties expressly waive their rights under Civil Code Section 1654.

15. <u>Confidentiality and Non-Disparagement</u>. The Parties agree that they shall maintain as confidential any and all facts relating to the terms and conditions of this Agreement, provided that any Party may make such disclosures as are required by law, or respond to any third party inquiries in a general and factually accurate manner, and that do not violate the terms of this <u>Section 15</u>. No facts or information pertaining to the terms and conditions of this Agreement shall be discussed with any person or entity, save and except the attorneys and accountants for each Party, unless it is necessary and essential to discuss such facts or information for the purpose of effectuating or carrying out a provision of this Agreement. Each Party covenants and agrees to refrain from all statements and conduct, verbal or otherwise and in any medium, that: (i) disparage or damage or might tend to disparage or damage the reputation, goodwill or good standing in the community of the other Parties, and their partners, members, managers, agents, or employees; or (ii) that is likely to result in civil liability; provided, however, that the foregoing shall not limit a Party's rights to make truthful statements in response to a subpoena or in the course of an investigation conducted by a government agency.

16. <u>Counterparts</u>. This Agreement may be signed in any number of counterparts with the same effect as if the signatures to each counterpart were upon a single instrument and is intended to be binding when all Parties have delivered their signatures to the other Parties. All counterparts shall be deemed an original of this Agreement. This Agreement, to the extent signed and delivered by means of a facsimile machine, portable document format or other electronic transmission (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com), will be treated in all manner and respects as an original contract and will be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. Any such signature page will be effective as a counterpart signature page hereto without regard to page, document or version numbers or other identifying information thereon, which are for convenience of reference only. At the request of any Party or to any such contract, each other Party will re-execute original forms thereof and deliver them to all other Parties. No Party or to any such contract will raise the use of a facsimile machine, portable document format or other electronic transmission (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine, portable document format or other electronic transmission (including any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) as a defense to the formation of a contract and each such Party forever waives any such defense.

[SIGNATURES TO APPEAR ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the Effective Date.

**MRW:**

Martin Ray Winery, Inc.,
a California corporation

By: _____ *[signed] COURTNEY BENHAM* (DocuSigned, DA08A4F28F5E429...)
Name: Courtney Benham
Title: CEO

**COMPANY:**

Phoenix Wine Company, LLC,
a California limited liability company

By: _____ *[signed] COURTNEY BENHAM* (DocuSigned, DA08A4F28F5E429...)
Name: Courtney Benham
Title: Manager

**ELEVEUR:**

Eleveur LLC,
a California limited liability company

By: _____ *[signed] COURTNEY BENHAM* (DocuSigned, DA08A4F28F5E429...)
Name: Courtney Benham
Title: Manager

**HUGHES:** *[signed] Cameron Hughes* (DocuSigned, DFE8E5D854E147B...)

_____
Cameron Hughes

Signature Page

<u>Exhibit A</u>

Form of Assignment of Membership Interests - Company

[See attached]

## MEMBERSHIP UNIT ASSIGNMENT AGREEMENT

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, CAMERON HUGHES, a California resident ("**Assignor**"), does hereby assign and transfer to MARTIN RAY WINERY, INC., a California corporation ("**Assignee**"), forty-nine percent (49%) of his membership interest in Phoenix Wine Company LLC, a California limited liability company (the "**Company**"), standing in the name of Assignor on the books of the Company and all rights and interests related thereto, including, but not limited to, such portion of Assignor's capital account represented by such membership interests, and such portion of Assignor's rights to profits, losses, and cash distributions of the Company represented by such interest.

Assignor hereby represents and warrants to Assignee that Assignor is the owner of record of all right, title, and interest, free and clear of all liens and encumbrances, in and to the membership interest being assigned and transferred herein.

Assignor does hereby irrevocably constitute and appoint the authorized member of the Company as attorney-in-fact to transfer the said membership interest on the books of the Company and to take any and all other actions necessary to make such substitution.

The effective date of this Assignment shall be September 26, 2023.


**ASSIGNOR**:

_____
Cameron Hughes, a California resident

<u>Exhibit B</u>

Form of Assignment of Membership Interests - Eleveur

[See attached]

# MEMBERSHIP UNIT ASSIGNMENT AGREEMENT

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, CAMERON HUGHES, a California resident ("**Assignor**"), does hereby assign and transfer to MARTIN RAY WINERY, INC., a California corporation ("**Assignee**"), forty-nine percent (49%) of his membership interest in Eleveur LLC, a California limited liability company (the "**Company**"), standing in the name of Assignor on the books of the Company and all rights and interests related thereto, including, but not limited to, such portion of Assignor's capital account represented by such membership interests, and such portion of Assignor's rights to profits, losses, and cash distributions of the Company represented by such interest.

Assignor hereby represents and warrants to Assignee that Assignor is the owner of record of all right, title, and interest, free and clear of all liens and encumbrances, in and to the membership interest being assigned and transferred herein.

Assignor does hereby irrevocably constitute and appoint the authorized member of the Company as attorney-in-fact to transfer the said membership interest on the books of the Company and to take any and all other actions necessary to make such substitution.

The effective date of this Assignment shall be September 26, 2023.

**ASSIGNOR**:

_____
Cameron Hughes, a California resident